**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LBS INNOVATIONS LLC, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 2:11-cv-00407-JRG |
| | § | |
| v. | § | Jury Trial Demanded |
| | § | |
| BP AMERICA, INC., *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| LBS INNOVATIONS LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 2:12-cv-00735-JRG |
| v. | § | |
| | § | Jury Trial Demanded |
| ALFRED ANGELO, INC., *et al.*, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff LBS Innovations, LLC's, Opening *Markman* Brief (Dkt. No. 383).  Also before the Court is the response of Defendants Choice Hotels International, Inc., Costco Wholesale Corporation, KeyCorp, Sally Beauty Supply LLC, Starbucks Corporation, Target Corporation, The Kroger Co., U.S. Bancorp, Wells Fargo Bank, N.A., Chick-fil-A, Inc., Safeway Inc., True Value Company, Aldi Inc., Ben & Jerry's Homemade Holdings, Inc., Denny's, Inc. d/b/a Denny's Restaurants, Inc., Jo-Ann Stores, Inc., Pilot Travel Centers LLC, Randall's Food & Drugs LP, Safeway, Inc. d/b/a Tom Thumb, The Cheesecake Factory Restaurants, Inc., Barnes & Noble, Inc., Bed Bath & Beyond, Inc., Regions Financial Corporation, SunTrust Banks, Inc., and Home Depot U.S.A., Inc. (Dkt. No. 387).  Further before

the Court is Plaintiff's reply (Dkt. No. 390).

The Court held a claim construction hearing on June 6, 2013.   For the following reasons, the Court adopts the constructions set forth below.

## TABLE OF CONTENTS

I.      BACKGROUND ............................................................................................. 4

II.     LEGAL STANDARD ................................................................................... 6

III.    CONSTRUCTION OF AGREED TERMS .............................................. 11

IV.     CONSTRUCTION OF DISPUTED TERMS ........................................... 11

   a.    "timely situation information" .......................................................... 11

   b.    "a computer" and "said computer" .................................................. 18

   c.    "data field" ........................................................................................ 24

   d.    "making apparent to the aural and tactile senses of the user" ............ 30

   e.    "transmittable" .................................................................................. 35

   f.    "converting said coordinates to an appropriately proportionate representation" 38

   g.    "displaying" ....................................................................................... 43

   h.    "displaying …" step (Element "c" in claim 11) ............................... 45

   i.    "whereby said user may quickly receive and display timely situation information" ........................................................................................ 47

V.      CONCLUSION ............................................................................................ 49

## I.    BACKGROUND

Plaintiff brings suit alleging infringement of United States Patent No. 6,091,956 ("the '956 Patent") entitled "Situation Information System."  The application for the patent was filed on June 12, 1997, and the '956 Patent was issued on July 18, 2000.

The '956 Patent generally describes a "wireless system for providing services and time-critical information about places and events to mobile computers and their users proximate to their locations or potential destinations …." '956 Patent at Abstract.[1]  The specification states that "[i]nformation about places and their events, situation information, helps people to function closer to their potential," and that "[s]uch information resides available, but largely inaccessible because it lies unindexed and distributed in a plethora of largely local repositories." '956 Patent at 2:57-61.  Thus, the invention is directed to increasing "the availability, accessibility, and timeliness of [information that specifically fits a person's needs], about specific places, events, and their details, called situations." '956 Patent at 1:35-38.

In one embodiment, "the situation information system provides users with up-to-date map-tracking information relating their location to events and situations as well as enabling them to respond in a timely manner." '956 Patent at 4:48-51.  A user may choose to respond to such

---

[1] The entire Abstract of the '956 Patent follows:

> A wireless system for providing services and time-critical information about places and events to mobile computers and their users proximate to their current locations or potential destinations within enclosed areas, urban landscapes, and open areas, including travel distances and transit times, entertainment, merchants' messages, area attractions, communications, current locations of system users, and traffic congestion information and user-generated information from bar-coded objects and digital photographs of scenes and other materials. Included is a combination low-radiation dosage-reception handset for wireless communications which includes bar-code reader and digital camera peripheral devices for mobile computers, a bracket for interfacing a mobile computer with radio to external systems, and methods for improving the operations of computer reception, search, and display of such information for the edification, efficiency, and enjoyment of computer users.

information "by visiting one or more of the events, avoiding them entirely, communicating them to another person, rectifying them, or otherwise modifying plans and itineraries in light of such events." '956 Patent at 4:42-46.  The specification additionally discloses that the system may provide a user with "mappable information items, including map features … which may be executably selected by a user to display additional information … by receiving new information transmitted from the service provider." '956 Patent at 21:55-62.

Plaintiff asserts Claim 11 against Defendants.  It is a method claim for communicatively executing one or more transmittable mappable hypertext items and is reproduced below:

> A method of communicatively executing, including making apparent to the aural and tactile senses of the user, one or more transmittable mappable hypertext items representing people, organisms, and objects, including buildings, roads, vehicles, and signs, on a computer in a manner scalably representing interrelationships of said objects, comprising the steps of:
>
> a.      searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of said items and copied from the memory of said computer or received from an alternate source, for a field containing geographical coordinates, said each of said code sequences includes an item reference field, a name field, a location field including said geographical coordinates, and a data field,
>
> b.      converting said coordinates to an appropriately proportionate representation on said computer, and
>
> c.      displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, in which said mappable hypertext items are quickly received, mapped, and optionally executably selected by said user to provide additional of said situation information or received, stored, and transmitted by a provider of said situation information.

Plaintiff previously asserted Claim 11 in the case of *LBSI Innovations LLC v Aaron Bros.*

*et al.*, No. 2:11-CV-00142 ("*Aaron Bros.*").  In *Aaron Bros.*, Judge David Folsom construed the following terms/phrases at issue in this case: (1) "including making apparent to the aural and tactile senses of the user"; (2) "a computer" and "said computer"; (3) "timely situation information"; (4) "displaying"; and (5) the "displaying …" step (Element "c").  *See Aaron Bros.*, Dkt. No. 195.  Judge Folsom's claim construction order is attached to Plaintiff's opening brief as Exhibit B (Dkt. No. 383-2), and the claim construction briefs in that case are attached to Plaintiff's opening brief as Exhibits C-E (Dkt. Nos. 383-3, 383-4, 383-5).

## II.     LEGAL STANDARD

It is understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979.  The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.*  A patent's claims must be read in view of the specification, of which they are a part. *Id.*  For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.*  "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of

the patentee's invention.  Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992).  Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  In *Phillips*, the court set forth several guideposts that courts should follow when construing claims.  In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.*  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art. *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the

specification." *Id.*  Although the claims themselves may provide guidance as to the meaning of

particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315

(quoting *Markman*, 52 F.3d at 978).   Thus, the *Phillips* court emphasized the specification as

being the primary basis for construing the claims. *Id.* at 1314-17.   As the Supreme Court stated

long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive

portions of the specification to aid in solving the doubt or in ascertaining the true intent and

meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878).   In

addressing the role of the specification, the *Phillips* court quoted with approval its earlier

observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir.

1998):

> Ultimately, the interpretation to be given a term can only be
> determined and confirmed with a full understanding of what the
> inventors actually invented and intended to envelop with the claim.
> The construction that stays true to the claim language and most
> naturally aligns with the patent's description of the invention will
> be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316.   Consequently, *Phillips* emphasized the important role the

specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation.

Like the specification, the prosecution history helps to demonstrate how the inventor and the

Patent and Trademark Office ("PTO") understood the patent. *Id.* at 1317.   Because the file

history, however, "represents an ongoing negotiation between the PTO and the applicant," it may

lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.*

Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of

how the inventor understood the invention and whether the inventor limited the invention during

prosecution by narrowing the scope of the claims. *Id.*; *see Microsoft Corp. v. Multi-Tech Sys.*,

*Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony.  The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24.  According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court emphasized that claim construction issues are not resolved by any magic formula.  The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id.* at 1323-25.  Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

Indefiniteness is a "legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (citation omitted).  A finding of indefiniteness must overcome the statutory presumption of validity. *See* 35 U.S.C. § 282.  That is, the "standard [for finding

indefiniteness] is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area."

*Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).

> In determining whether that standard is met, i.e., whether the claims at issue are sufficiently precise to permit a potential competitor to determine whether or not he is infringing, we have not held that a claim is indefinite merely because it poses a difficult issue of claim construction. We engage in claim construction every day, and cases frequently present close questions of claim construction on which expert witnesses, trial courts, and even the judges of this court may disagree. Under a broad concept of indefiniteness, all but the clearest claim construction issues could be regarded as giving rise to invalidating indefiniteness in the claims at issue. But we have not adopted that approach to the law of indefiniteness. We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be. If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds. . . . By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity . . . and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.

*Exxon*, 265 F.3d at 1375 (citations and internal quotation marks omitted).

In general, prior claim construction proceedings involving the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se*." *Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006).

## III.    CONSTRUCTION OF AGREED TERMS

The Court hereby adopts the following agreed constructions:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "optionally executably selected by said user to provide additional of said situation information" | "displayed in a manner that permits the user to select the item so as to provide additional situation information about the item" |
| "mappable hypertext items" | "text or one or more symbols, displayable on a map, that can be selected to access additional information" |
| "selectably scalably" | "capable of being chosen for adjustment in size or detail" |

## IV.    CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of nine terms/phrases in claim 11 of the '956 Patent.

### a.    *"timely situation information"*

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "timely situation information" | "up-to-date information about an event, or a condition, occurring or about to occur at a place" | "time-critical information about an event, or a condition, occurring or about to occur at a place" |

In *Aaron Bros.*, Judge Folsom construed the disputed phrase "timely situation information."   Based on the previous construction, the parties here agree that the claimed "situation information" should be construed as "information about an event, or a condition, occurring or about to occur at a place."  The parties' disagree on: (1) whether "timely" should be construed as "up-to-date" versus "time-critical;" and (2) whether the agreed construction for "situation information" covers information about a place, even if the information is not about

any identifiable event or condition occurring or about to occur at the place.

Regarding the first issue related to "timely," the Court agrees with Plaintiff that its proposed construction of "up-to-date" is consistent with the intrinsic evidence.  The Court further notes that the "time-critical" aspect proposed by Defendants is captured by the agreed construction for "situation information."  *See, e.g., Aaron Bros.*, Dkt. No. 195 at 19 ("Defendants' proposal of 'occurring or about to occur,' however, comports with the timeliness requirement consistently disclosed throughout the '956 Patent as well as in the disputed claim term itself and should therefore be included in the Court's construction.").

Regarding the second issue, the Court agrees with Defendants that the "situation information" is "information" about: (1) places; *and* (2) events or conditions associated with those places.  In other words, it is not merely information about a place (*e.g.*, an address or telephone number).  Judge Folsom reached the same conclusion in *Aaron Bros*. *See Aaron Bros.*, Dkt. No. 195 at 17.  Accordingly, with this clarification for "situation information," the Court adopts Plaintiff's construction because it is consistent with the intrinsic evidence.

### i.    The Claim Language

The Court first turns to the language of the claims, as it provides "substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1313 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  The phrase "timely situation information" appears one time in claim 11.  The Court finds that the phrase "situation information" appears two other times in claim 11 and is meant to have the same meaning as it does in the disputed phrase.  Regarding the first issue related to "timely," the Court finds independent claim 14 recites "*time-critical*, location dependent, information" in the claim. '956 Patent at 32:36 (emphasis added).  In contrast, claim 11 does not use the phrase "time-critical,"

but instead uses "timely."  Thus, if the patentee had intended to draft the claim as "time-critical" information he would have done so as he did in claim 14.  *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").  Accordingly, the Court finds no reason to redraft "timely" as "time-critical" as Defendants suggested.  The Court will now turn to the other intrinsic evidence.

### ii.    The Intrinsic Evidence

In addition to the claims, the other intrinsic evidence in this case supports Plaintiff's construction, but does not support its contention regarding the agreed construction for "situation information."  Regarding the first issue related to "timely," the defendants in *Aaron Bros.* proposed that "timely" should be construed as "up-to date" and argued that "up-to-date" information was not the same thing as "current" information (as proposed by plaintiff in *Aaron Bros.*).  Specifically, the defendants argued that the "claimed timely situation information has a time-critical aspect to it that a user needs at the moment to respond to some event or condition occurring or about to occur (*e.g.*, an on-going sale at a store, upcoming traffic, etc . . .)." (Dkt. No. 383-4 at 15.)   While the court in *Aaron Bros.* was ultimately not asked to construe "timely," Judge Folsom noted that "up-to-date" would be the proper construction if "timely" was disputed by the parties. *See Aaron Bros.*, Dkt. No. 195 at 17-19.  For the following reasons, and for the reasons stated in *Aaron Bros.* as discussed below, the Court concludes that "timely" should be construed as "up-to-date."

First, "up-to-date" appears in the first paragraph of the Summary of the Invention section of the specification:

> The Situation Information System relates to information communications between sources of *timely information* and one or more information users which also provide information to other users. Broadly stated, situation information pertains to information about events or conditions associated with places which the mobile user may encounter or consider visiting. It particularly includes *events occurring or about to occur* in a locus accessible to the mobile user and to which the user may arbitrarily choose to respond by visiting one or more of the events, avoiding them entirely, communicating them to another person, rectifying them, or otherwise modifying plans and itineraries in light of such events. Sources of situation information are databases of local information and information from users themselves. Additionally, the situation information system provides users with *up-to-date* map-tracking information relating their location to events and situations as well as *enabling them to respond in a timely manner.*

'956 Patent at 4:33-51 (emphasis added).  As Judge Folsom noted, the reference to "Situation Information System" in all capitals, as well as the presence of this paragraph in a section titled "Summary of the Invention," weighs in favor of construing "timely" as "up-to-date." *See Aaron Bros.*, Dkt. No. 195 at 18.

Likewise, the Background-General Discussion section discusses the need to provide seniors and disabled persons with "ready access to *timely, proximate information*, i.e., information relevant to a user's location such as local services information, such as transportation-system routes and schedules identifying nearby stops." '956 Patent at 1:45-54 (emphasis added). This section also discusses that "*[t]imely and reproducible information* about situations involving criminal acts would serve to reduce their numbers by deterring the perpetrators." '956 Patent at 2:47-49 (emphasis added). It also states that "[w]ith better and *more timely information* about traffic, … some traffic jams could be avoided." '956 Patent at 2:38-40 (emphasis added).

The remainder of the specification is consistent with construing "timely" as "up-to-date."

For example, the '956 Patent contemplates that "timeliness" of information about a traffic jam or a special offer at a store requires that information be conveyed to the user while the user can still effectively act upon it. '956 Patent at 4:42-46, 7:33-36 ("special offers"), 13:29-38 ("short-term offer of merchandise"), 16:27-31 ("current, short-term offers"), 19:33-37 ("[t]raffic congestion"), Figure 2 ("1 hr. Special"), Figure 4 (same), and Figure 6 ("Road congestion").

Defendants argue that "up-to-date," as interpreted by Plaintiff, is too broad and inconsistent with the specification because it provides no distinction between "situation information" and "timely situation information."  In other words, Defendants argue that Plaintiff is seeking to equate "up-to-date" information with information that is merely accurate, which ignores the time-sensitive requirement.[2]  As discussed above, the Court agrees that there is a time-sensitive requirement.  However, the Court finds that this requirement is captured by the agreed construction for "situation information," which requires "information about an event, or a condition, *occurring or about to occur* at a place."  While there are references to "time-critical" situation information in the specification, there are a number of references to "situation information," without the "time-critical" phrasal adjective.  *See, e.g.,* '956 Patent at 4:33-46, 6:31-44.  Accordingly, the Court construes "timely" as "up-to-date."

Regarding the second issue, Plaintiff asserts that "there is nothing in the intrinsic record or Judge Folsom's claim construction ruling suggesting that 'timely situation information' cannot be 'information about a place.'" (Dkt. No. 390 at 5.)  Further, during the claim construction hearing in this case, Plaintiff argued that there is undue emphasis on "event" in the parties' proposed constructions and that an address can be a "condition."  Similarly, Plaintiff

---

[2]  During the claim construction hearing, Plaintiff stated that "timely" situation information was not merely "accurate" information.  However, as discussed in more detail, Plaintiff's interpretation of the scope of the claim equates "timely" information with "accurate" information.

argued in its brief that "there is no basis for Defendants' asserted dichotomy between 'information about an event, or a condition, occurring or about to occur' and 'information about a place.'" (Dkt. No. 390 at 5.)  In other words, as in *Aaron Bros.*, it is Plaintiff's position that information about a place (*e.g.*, an address or a telephone number) is enough to satisfy the claim language.  The Court disagrees.

First, similar to Judge Folsom's conclusion, the Court finds that the patentee acted as lexicographer by defining "situation information" in the Background-General Discussion section.  Specifically, the patentee defined "situation information" as "[i]nformation about places and their events, *situation information*, helps people to function closer to their potential." '956 Patent at 2:57-59 (emphasis added); *Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs.").  Likewise, the Summary of the Invention discloses that "[b]roadly stated, situation information pertains to information about events or conditions associated with places which the mobile user may encounter or consider visiting." '956 Patent at 4:37-40.

Moreover, in *Aaron Bros.*, Judge Folsom rejected Plaintiff's argument that "situation information" may only include information about a place.  During the *Markman* hearing, Judge Folsom provided a tentative construction that Plaintiff argued was inadequate because it required "situation information" to include information about events or conditions, and not merely information about a place.[3]  Judge Folsom rejected this argument and construed "timely situation

---

[3] For example, Plaintiff made the following arguments during the *Aaron Bros. Markman* hearing:

> "*So what's missing we believe here is it should say:* timely information about an event, *a place or* a condition occurring about or about to occur at a place." Dkt. No. 387-6 at 3 (7:13-15) (emphasis added).

information" to mean "timely information about an event, or a condition, occurring or about to occur at a place." *See Aaron Bros.*, Dkt. No. 195 at 19.

Thus, to avoid ambiguity and resolve this claim construction dispute, the Court clarifies that its construction for the phrase "situation information" requires "information" about: (1) places; *and* (2) events or conditions associated with those places.[4]

### iii.    Court's Construction

In light of the claim language, the specification, and the prosecution history, the Court construes **"timely situation information"** to mean **"up-to-date information about an event, or a condition, occurring or about to occur at a place."**

---

"So clearly the situational information is not limited to an event or a condition occurring or about to occur at a place.  *I think place needs to be in there. . . .  I would be okay with, as I said, timely information about an event, place or a condition occurring or about to occur at a place.*"  *Id.* at 6 (10:8-14) (emphasis added).

[4]  The Court provides this clarification so that the parties are informed of the proper scope of the asserted claim. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").  Contrary to Plaintiff's suggestion, this conclusion is based solely on the intrinsic evidence and not by reference to the accused device.  *Neomagic Corp. v. Trident Microsystems*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be construed by reference to the accused device.").

### b.   *"a computer" and "said computer"*

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "a computer" | "one or more computers" | No construction proposed |
| "said computer" | "at least one of the one or more computers" | "the same computer that performs the other steps recited in the claim" |

The parties agree that "a computer" in the preamble of claim 11 provides the antecedent basis for the phrase "said computer" in the body of the claim.  The parties dispute whether the recited "said computer" requires at least one computer to perform each of the steps recited in the claim, or if the steps can be performed by multiple computers.  In *Aaron Bros.*, Judge Folsom determined that a single computer must perform the recited steps and construed "said computer" as "the same computer that performs the other steps recited in the claim."  Plaintiff argues that Judge Folsom erred by disregarding the well-established rule of construction that "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'"  *Baldwin Graphic Sys., Inc. v. Sibert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)).  Specifically, Plaintiff argues that Judge Folsom did not point to any language of the claim, the specification, or the prosecution history necessitating a departure from the rule.

The Court has reviewed the intrinsic evidence and finds that Defendants' proposed construction is consistent with the intrinsic evidence.  Specifically, the Court finds that an exception to the general rule is warranted because "the claim language and specification indicate that 'a' means one and only one, [thus] it is appropriate to construe it as such even in

the context of an open-ended 'comprising' claim." *Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir. 2011).  The Court first addresses the claim language.

### i.   The Claim Language

The term "a computer" appears in the preamble of claim 11.  The parties agree that it provides the antecedent basis for the phrase "said computer" in the body of the claim. *See, e.g.*, *Energizer Holdings Inc. v. I.T.C.*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) ("The requirement of antecedent basis is a rule of patent drafting, administered during patent examination.") (citing Manual of Patent Examining Procedure § 2173.05(e) (8th ed. rev. 2, May 2004)).  A person of ordinary skill in the art would therefore read "said computer" to refer to the same computer recited in the preamble.  Accordingly, no construction of "a computer" is necessary.  However, the Court will construe "said computer" in order to resolve the parties' dispute.

The term "said computer" appears in each of the three recited method steps as follows:

> 11. A method of communicatively executing, … on *a computer* …, comprising the steps of:
>
> a.  searching each of one or more unique mappable information code sequences,… copied from the memory of *said computer* or received from an alternate source …
>
> b.  converting said coordinates to an appropriately proportionate representation on *said computer*, and
>
> a.  displaying selectably scalably said items on *said computer* whereby *said user* may quickly receive and display timely situation information mapped in the context of spatial information….

'956 Patent at claim 11 (emphasis added).  The Court further notes that claim 13, which depends from claim 11, recites "whereby said user may choose representation by a unique icon on *said computer* which can be made to execute *on others of said computers.*" '956 Patent at claim 13 (emphasis added).

The Court finds that the preamble recites an intended use of the invention, which is to make "apparent" mappable hypertext items to the user of a computer.  In other words, the claim is written in the context of a single user and it accomplishes its intended result by "displaying … said items on *said computer* whereby *said user* may quickly receive and display timely situation information."  '956 Patent at claim 11.  Thus, a person of ordinary skill in the art would understand that the recited searching, converting, and displaying steps occur on a single user's computer so that "said user may quickly receive" timely situation information.

With respect to the displaying step, for example, "said computer" recited in Element "c" of the claims is referring to a single computer that displays information to a user.  The Court disagrees with Plaintiff's argument that the "displaying" step can be distributed across multiple computers simply because the single computer may "receive" information from an outside source.  Regarding the searching step, element "a" recites that the "searching" of "code sequences" are copied from "said computer or received [by said computer] from an alternate source."  Again, this does not prevent a single computer from receiving information from an alternate source, it only requires that a single computer must perform the "searching …" step as recited in the claim.  Finally, Element "b" recites that the coordinates are converted on "said computer."  Taken in context with dependent claim 13, a person of ordinary skill in the art would understand that claim 11 is referring to a single computer because claim 13 illustrates that when the patentee intended more than one computer, he recited "computers" in the plural and referred to these computers as "other" computers.  Thus, the Court finds that the claim language as a whole requires that at least one computer must perform each of the recited steps (*i.e.*, the "searching …" step, the "converting …" step, and the "displaying …" step).

To be clear, the Court's construction does not modify the claim language and does not

exclude a provider from receiving, storing, and providing situation information.  Likewise, the Court's construction does not mean that a system that uses more than one computer automatically falls outside the scope of the claim.  Instead, it only means that at least one computer must perform each of the recited steps of the method claim.  *See, e.g., FotoMedia Techs., LLC v. AOL, LLC*, 2009 U.S. Dist. LEXIS 62542, *22 (E.D. Tex. July 21, 2009) ("The Court does not rule that there cannot be more than one server, each capable of performing all of the recited steps, in the claimed system.").

The remaining claims also confirm that the patentee was referring to a single computer in claim 11.  Similar to dependent claim 13, independent claims 1 and 8 use "computers" and "users"/"customers" to indicate that these claims are referring to more than one computer and more than one user/customer.  In contrast, claim 11 recites "said computer" and "said user," indicating that the patentee intended that the same computer performs the steps recited in the claim for "the user."  If the patentee intended for the claimed method to be performed by multiple computers, then the patentee could have recited a first computer performing some of the steps and a second computer performing other steps.  In fact, this is what the patentee did in claim 13 by referring to "other" computers.  The patentee consistently used the plural "computers" when referring to more than one computer in the claims.  Accordingly, the claim language is consistent with a construction that requires at least one computer to perform each of the three steps recited in the claim.  The Court will now turn to the other intrinsic evidence.

## ii.    The Intrinsic Evidence

The other intrinsic evidence in this case, specifically the specification, supports the adoption of Defendants' construction.  Contrary to Plaintiff's argument, Defendants' construction does not exclude the preferred embodiment consisting of "at least one mobile

computer" performing the recited steps.  Similarly, Defendants' construction does not exclude

the exemplary embodiments illustrated in Figures 1 and 5.  Instead, it requires that "at least one"

mobile computer perform the steps recited in claim 11.  This is consistent with the specification

and the description of Figures 1 and 5.  In describing Figure 1, the specifications states:

> FIG. 1 antennas 14a through 14c are shown receiving information
> 16a, 16b, and 16c as well as 16d, 16e, and 16f from mobile
> *computers* 18b and 18c, respectively, to provide services from the
> service provider including finding the locations of the
> aforementioned mobile *computers* and receive information
> requests.  In addition, antenna 14b is shown transmitting and
> receiving information 15a to and from mobile *computer* 18a.

11:49-56 (emphasis added).  Thus, the specification teaches that at least one computer transmits

and receives.

Additionally, when referring to more than a single computer, the specification uses the

plural "computers."  When referring to a single computer, the specification uses the singular

"computer."  Thus, as described in the specification, Defendants' construction does not exclude

the exemplary embodiment of Figure 1.  There can be transmission and receiving to and from a

single mobile computer (18a), or there can be transmission and receiving from multiple mobile

computers (18b and 18c).  Claim 11 only requires that at least one computer performs the steps

recited in the claim.  This analysis is equally applicable to the description of Figure 5.  In other

words, Defendants' proposed construction does not exclude "distributed information systems" or

a "computer network" having more than one computer.  It only requires that at least one

computer performs the steps recited in claim 11.

Finally, Plaintiff argues that the flow charts shown in Figures 13 and 14 disclose that the

service provider's computer as well as the user's computer must both participate in the claimed

method.  The specification provides a flowchart for a "SERVICE PROVIDER COMPUTER

CONTROL PROGRAM" and a flowchart for a "USER'S COMPUTER CONTROL PROGRAM," but this does not change the analysis because claim 11 is recited from the perspective of a single user's computer. *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("[T]he mere fact that there is an alternative embodiment disclosed in the [asserted] patent that is not encompassed by [the] court's claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence.").

In contrast, there are other independent claims that are recited from the perspective of the service provider. *See, e.g.*, '956 Patent at claim 8 ("c. transmitting one or more said offers including by visual, aural, and other data types and other pertinent information, severally to said subset of said mobile computers with radios according to said customers' selections…"). In fact, Figure 14 indicates that that the steps of receiving situation information, searching and filtering through that information, as well as displaying mapped locations to the user, occur on a single user's computer. '956 Patent at 23:64-24:63. Accordingly, the Court concludes that Defendants' construction is consistent with the intrinsic evidence.

### iii. Court's Construction

In light of the intrinsic evidence, the Court adopts Defendants' proposed construction and construes **"said computer"** to mean **"the same computer that performs the other steps recited in the claim."** The parties agree that **"a computer"** provides the antecedent basis for the phrase **"said computer"** in the body of the claim. Accordingly, having construed **"said computer,"** the Court concludes that **"a computer"** is unambiguous, is easily understandable by a jury, and requires no construction.

### c.   *"data field"*

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "data field" | No construction is necessary. | "a field which (1) provides information as to whether the item is capable of display in a pop-up menu, (2) indicates whether or not the item should be displayed, and (3) indicates whether the item, if displayed, should be executably selectable by the user" |

The parties dispute whether the claimed "data field" should be limited to the embodiment disclosed in the specification.  Defendants contend that it should be limited to the disclosed embodiment.  Specifically, Defendants argue that "data [type] field" is an obvious drafting error that should be corrected by the Court.  Plaintiff responds that Defendants' construction does not construe the claim term "field," but impermissibly reads numerous additional limitations into the claim term "data."   The Court disagrees with Plaintiff and finds that the patentee intended to limit claim 11 to the embodiment disclosed in the specification.  However, the Court does not adopt Defendants' construction and is not persuaded that it needs to correct a "typo" to construe the disputed phrase.  Instead, the Court provides a construction that is consistent with the claim language, the specification, and the prosecution history as understood by a person of ordinary skill in the art. *Phillips*, 415 F.3d at 1312-13 (stating that the claim terms should be construed in accordance with their "ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of invention").

### i.   The Claim Language

The phrase "data field" appears only one time in claim 11.  Specifically, "data field" is

included in Element "a," which recites four fields of data that make up the "mappable

information code sequence":

> searching each of one or more unique mappable information code
> sequences, . . . said each of said code sequences includes an item
> reference field, a name field, a location field including said
> geographical coordinates, and a data field;

'956 Patent at Claim 11.  As discussed in more detail below, the first three fields recited in the

claim language match the first three elements described in the specification.[5] '956 Patent at

21:51-22:35.  Likewise, the fourth field recited as a "data field," matches the fourth element

described in the specification as a "data type." *Id.*  The Court also finds that the phrase "data

field" does not appear in any other claim or anywhere in the specification.  Thus, a person of

ordinary skill in the art would understand that the plain language of the claimed "data field" is

referring to embodiment disclosed in the specification that describes four data fields.  *Phillips*,

415 F.3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim

term not only in the context of the particular claim in which the disputed term appears, but in the

context of the entire patent, including the specification.").   Indeed, Defendants have a

meritorious argument that the claim is indefinite unless limited to the disclosed embodiment.

*Energizer,* 435 F.3d at 1370 ("Claim definiteness is analyzed 'not in a vacuum, but always in

light of the teachings of the prior art and of the particular application disclosure as it would be

interpreted by one possessing the ordinary level of skill in the pertinent art.'") (quoting *In re

Moore*, 439 F.2d 1232, 1235 (CCPA 1971)).  The Court will now turn to the other intrinsic

evidence.

---

[5]   The "name" field in the claim corresponds to the "identifier" element described in the
specification.   '956 Patent at 22:10-12 ("Element identifier 29b provides the mapped item's
name ….").

### ii.    The Intrinsic Evidence

Having reviewed the claim language, specification, and prosecution history, the Court finds that a person of ordinary skill in the art would understand that the patentee intended to limit the claimed "data field" to the embodiment disclosed in the specification.  *Alloc, Inc. v. Int'l Trade Comm.*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) ("[W]here the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims.").  As discussed above, the specification describes four specific elements that make up a mappable information code sequence.  For example, Figure 12 is "a diagram of the mappable hypertext code sequence for displaying rapidly mappable and executably selectable information, individually called mappable hypertext items, to a mobile device for display."  '956 Patent at 11:23-26.  The figure depicts the four elements contained in the sequence:



Fig. 12
29 →

| item ref. 29a | identifier 29b | location 29c | data type 29d |

As shown above, the fourth element in the code sequence is the "data type" field.[6]  The relevant disclosure describing the mappable hypertext code sequences likewise identifies a data type field as the fourth element.  The specification states that "FIG. 12 shows mappable hypertext code 29 consisting of element item reference 29a, identifier 29b, location 29c, and data type 29d."  '956 Patent at 21:51-54; *see also id.* at 22:15-30.  Thus, the Court finds that a person of ordinary skill in the art would recognize that claim 11 is directed to the embodiment disclosed

---

[6]   The first three fields recited in the claim language match the first three fields described in the specification.  The item reference and the location fields in the claim language match the specification exactly.  Further, the "name" field in the claim corresponds to the "identifier" field described in the specification.  '956 Patent at 22:10-12 ("Element identifier 29b provides the mapped item's name ….").

in the specification.

Indeed, the only data field disclosed in the specification is in connection with the mappable hypertext code sequences.  Outside of this context, the phrase "data field" does not appear anywhere in the specification.  Plaintiff argues that this proves nothing and the term has a plain and ordinary meaning to one of ordinary skill in the art.  However, Plaintiff fails to provide any suggestion of how one of ordinary skill in the art would interpret this term in light of the teachings of the prior art and the disclosure of the '956 Patent.  Rather, one of ordinary skill in the art would understand that the claimed "data field" is referring to the disclosed embodiment given the important role this element serves in the claimed "mappable hypertext items." Specifically, this field indicates whether and how a mappable item should be displayed on the map, and whether and how the item should be made selectable to allow a user to access additional information.  The specification describes this element as follows:

> Element *data type 29d* provides information as to *whether the item's symbol, icon, or name is capable of being included with other items in a executably selectable menu* which appears to pop up, that is, to quickly graphically appear adjacent to the icon or text item *which was executably selected by the user*, on the user's computer display, *whether it is to be included in the map displayed on user's computer, and, if displayed, whether the item's symbol,* which may be a standard display symbol which is resident in memory, including storage, on user's device, *or the item name can be subsequently selected by a user to automatically provide additional information about the item*, such as by enlarging the detail, called zooming in, or, for example, as hypertext, in which the item name or symbol can be selected or clicked on by a user to provide additional information.

'956 Patent at 22:15-30 (emphasis added).  Given that this element is one of the four major elements of the "mappable hypertext code 29," a person of ordinary skill in the art would understand that the patentee intended to limit the claimed "data field" to this disclosed embodiment.  Thus, a person of ordinary skill in the art would understand that the claimed "data

field" is an element that provides: (1) information as to whether the item's symbol, icon, or name is capable of being included with other items in a executably selectable menu that appears on the user's computer display; and (2) information as to whether the item is to be included in a map displayed on the user's computer, and, if displayed, whether the item's symbol, icon, or name can be subsequently selected to provide additional information about the item.

Additionally, the prosecution history confirms that the patentee intended to limit claim 11 to the embodiment disclosed in the specification.  Claim 11 issued from what was initially filed as claim 17, which depended upon original independent claim 16.  In the first office action, the Examiner stated that the subject matter of claim 17 would be allowable, but objected to the claim for depending from a rejected base claim (claim 16) as stated below:

> *Allowable Subject Matter*
>
> 7.     Claims 17-19 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

Dkt. No. 387-11 at 8.  Original claim 17 recited the four fields contained in the mappable information code sequence:

> 17. The method in claim 16 wherein each of said mappable information code sequences is an information sequence including:
>        a. an item reference field,
>        b. a name field,
>        c. a location field including said geographical
>           coordinates, and
>        d. a data type field whereby said mappable graphical items may be quickly received, mapped, and optionally executably selected by the user to provide additional situation information or received, stored, and transmitted by the situation information service provider.

Dkt. No. 387-10 at 5.  As illustrated above, the fourth field recited in the original claim language was a "data type field" as described in the specification.

In response to the office action, the patentee rewrote claim 17 as an independent claim—application claim 35. (Dkt. No. 387-12 at 7-8.)  The applicant's remarks did not indicate that any substantive change to the claim was intended via the amendment.  *Id.* at 28 ("Old claim 17 is combined with old independent claim 16 and rewritten (as mentioned above) as independent claim 35.").  Likewise, the Examiner's reasons for allowing claim 35 indicates that he was operating under his previous statement for why the claim would be allowable. *See* Dkt. 387-13 at 8-9 ("[C]laim 35 contains the allowable subject matter of previous claim 16.").  Given this, the Court finds that the prosecution history indicates that a person of ordinary skill in the art would understand that the patentee intended to limit claim 11 to the embodiment described in the specification.  Accordingly, the Court provides a construction of "data field" that is consistent with the claim language, the specification, and the prosecution history.

### iii.    Court's Construction

In light of the claim language, the specification, and the prosecution history, the Court construes **"data field"** to mean **"a field that provides: (1) information as to whether the item's symbol, icon, or name is capable of being included with other items in an executably selectable menu that appears on the user's computer display; and (2) information as to whether the item is to be included in a map displayed on the user's computer, and, if displayed, whether the item's symbol, icon, or name can be subsequently selected to provide additional information about the item."**

### d.   *"making apparent to the aural and tactile senses of the user"*

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "making apparent to the aural and tactile senses of the user" | No construction necessary. This phrase in the preamble is not a limitation | "conveying to the user through aural and tactile outputs" |

The phrase "making apparent to the aural and tactile senses of the user" appears in the preamble of claim 11.  Like the parties in *Aaron Bros.*, the parties dispute whether this preamble phrase should be construed as a required claim limitation.  The Federal Circuit has stated that there is no "litmus test [that] defines when a preamble limits claim scope." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).  For example, the "preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim," but "is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Id.* (citation and internal quotation marks omitted).  In other words, whether to treat a preamble as a claim limitation must be "determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys.*, 329 F.3d 823, 831 (Fed. Cir. 2003).

Defendants contend that the *entire* preamble should be construed as limiting because it provides antecedent basis for several claim terms, including "said user," "said computer," and "said items."[7]  Defendants also argue that the disputed phrase is limiting because it provides

_____

[7]  The entire preamble for claim 11 follows:
> A method of communicatively executing, including making apparent to the aural and tactile senses of the user, one or more transmittable mappable hypertext items representing people, organisms, and objects, including buildings, roads, vehicles, and signs, on a computer in a manner scalably representing interrelationships of

"additional … steps underscored as important by the specification." *Catalina*, 289 F.3d at 808.

Finally, Defendants note that the Examiner's Notice of Allowability cited the disputed phrase.

(Dkt. No. 387-15 at 4.)  Plaintiff responds that Judge Folsom addressed this issue in the *Aaron*

*Bros.* Claim Construction Order and found that the language is not a limitation but merely a

statement of purpose or intended use for the invention.  Having reviewed the intrinsic evidence,

the Court concludes that the preamble phrase does not limit the scope of claim 11.

### i.    The Claim Language

The phrase "including making apparent to the aural and tactile senses of the user" appears

in the preamble of claim 11.  The Court finds that the words "aural" and "tactile senses" only

appear in the preamble and are not referenced or recited in the body of claim 11.  This is in

contrast to independent claims 1 and 8, which recite "audible, visual, and tactile execution" and

"visual, aural, and other data types" in the body of the claim, and not in the preamble.  This

contradicts Defendants' argument that the Examiner understood that the disputed phrase was a

required limitation.  As indicated by these claims, the Examiner did not require "aural" or

"tactile" in the body of all of the independent claims.  Moreover, this language is not included in

independent claim 14, further supporting the conclusion that it is not a requirement of the

invention, but instead is only one embodiment described in the specification. *Laitram Corp. v.*

*Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred

embodiment, such as those often present in a specification, are not claim limitations.").

The Court also notes that the term "user" in the disputed phrase is preceded by the

definite article "the," not the indefinite article "a."  In contrast, the term "computer" is preceded

with the indefinite article "a."  The parties agree that the preamble provides antecedent basis for

said objects, comprising the steps of …

"said computer."  This is not true for "said user," because the preamble uses the definite article

"the."  Thus, Defendants' argument that the preamble provides antecedent basis for "said user"

is not consistent with the claim language.

Moreover, the scope of the claim is "reasonably ascertainable by those skilled in the art"

without reading this preamble phrase as a claimed limitation.  *Bose Corp. v. JBL, Inc.*, 274 F.3d

1354, 1359 (Fed. Cir. 2001); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116

(Fed. Cir. 1987) (finding that lack of antecedent basis for "said collar" did not render claim

indefinite where "specification shows only one collar and in only one place").  A person of

ordinary skill in the art would understand that "said user" is referring to the user of "said

computer" recited in the body of the claim language.  Accordingly, the Court concludes that the

plain language of the claim does not require reading this preamble phrase as a required

limitation.  The Court will now turn to the other intrinsic evidence.

## ii.    The Intrinsic Evidence

In addition to the claims, the other intrinsic evidence in this case, specifically the

specification and prosecution history, supports the Court's conclusion that the plain language

of the claim does not require reading this preamble phrase as a required claim limitation.

Defendants argue that the disputed phrase is limiting because it provides "additional… steps

underscored as important by the specification."  *Catalina*, 289 F.3d at 808.  Specifically,

Defendants argue that aural and tactile outputs are recognized as important aspects of the

purported invention throughout the specification.  Defendants cite to four portions of the

specification to support their argument. (Dkt. No. 387 at 26-27.)

The Court disagrees with Defendants' conclusion and finds that each reference to "aural"

and "tactile" is in the context of a particular embodiment and should not be imported into the

claim.  For example, the statement that "*[c]ertain* information device users, … *may require alternatively* conveyed information, *such as* that which is verbally or tactilely conveyed from an appropriately configured device," discloses a particular embodiment and is not describing the invention as a whole. '956 Patent at13:16-20 (emphasis added); *see also id.* at 16:5-10. Likewise, the disclosure of the capability to present information as "tactile and aural as well as visual" pertains to "*[o]ne such* transceiver of subject invention," not necessarily *all* devices. '956 Patent at 5:48-52 (emphasis added).

Moreover, the Court disagrees with Defendants' contention that if the preamble is not a limitation, the remaining claim limitations would not be suitable for making information apparent to a user.  The items are made "apparent" to the user by "displaying … said items on said computer" as recited in the body of the claim.  In other words, the preamble does not recite "essential structure or steps" and is not "necessary to give life, meaning, and vitality to the claim."  *Catalina*, 289 F.3d at 808.  Instead, the patentee in this case defined "a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention."  *Id.; Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288-1289 (Fed. Cir. 2008) ("Thus, in general, the purpose of a claim preamble is to give context for what is being described in the body of the claim; if it is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a rejection), we do not construe it to be a separate limitation.").

Finally, the Court disagrees that the prosecution history confirms that the disputed phrase is necessary to give life and meaning to claim 11.  Claim 11 issued from what was initially filed as claim 17, which depended upon original independent claim 16.  The Examiner explicitly stated that the subject matter of claim 17 would be allowable, if rewritten to include all of the

limitations of the base claim 16. (Dkt. No. 387-11 at 8.)  As shown below, neither original claim

16 nor original claim 17 contained the phrase "including making apparent to the aural and tactile

senses of the user":

```
16. A method of displaying one or more transmittable mappable
hypertext items representing objects, including buildings, roads,
vehicles, and signs, on the display of a computer in a manner
scalably representing the interrelationships of said objects by

a. searching each of one or more unique mappable information
code sequences, each of which uniquely representing one of
said items and taken from the memory of said computer, for a
field containing geographical coordinates,
b. converting said coordinates to an appropriate rectangular
grid sized for appropriate proportionate display, and
c. selectably scalably appropriately displaying said items
on said computer display whereby a user may quickly receive
and display timely situation information mapped in the
context of geographical information appropriate to an area.

17. The method in claim 16 wherein each of said mappable
information code sequences is an information sequence including:
     a. an item reference field,
     b. a name field,
     c. a location field including said geographical
          coordinates, and
     d. a data type field whereby said mappable graphical items
     may be quickly received, mapped, and optionally executably
     selected by the user to provide additional situation
     information or received, stored, and transmitted by the
     situation information service provider.
```

Dkt. No. 387-10 at 5.  Moreover, Defendants have not cited to a single statement by the patentee or

the Examiner that discusses any of the preamble language with regard to a rejection, amendment, or

the prior art.  Instead, the Examiner stated that claim 11 would be allowable if it was rewritten as a

combination of original claims 16 and 17.  Only "clear reliance on the preamble during prosecution

to distinguish the claimed invention over prior art transforms the preamble into a claim limitation…[w]ithout such reliance, however, the preamble is generally not limiting…" *Catalina*, 289 F.3d at 808-809 (citation omitted).   The mention of the term at issue together with other limitations of the claim in the Notice of Allowability is not enough to rebut the general principle that the preamble is not a limitation.   Defendants have failed to establish a "clear and unmistakable" disclaimer of claim scope. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003).   Accordingly, the Court concludes that the claim language, the specification, and the prosecution history support the conclusion that the preamble phrase does not limit the scope of claim 11.

### iii.    Court's Construction

In light of the claim language, the specification, and the prosecution history, the Court concludes that the phrase **"including making apparent to the aural and tactile senses of the user"** does not limit the scope of claim 11.

### e.   *"transmittable"*

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "transmittable" | "capable of being communicated between computers over a network" | No need to construe; plain and ordinary meaning (i.e., "capable of being transmitted"). |

The parties' dispute is focused on whether the term "transmittable," which appears only in the preamble of claim 11, should be construed.  Defendants contend that "transmittable" is a commonly understood word and should be given its plain and ordinary meaning.  Plaintiff contends that "transmittable mappable hypertext items" provides that antecedent basis for the term "mappable hypertext items" used in the body of the claim.  Defendants respond that

Plaintiff's construction rewrites the claim language and has no basis in the claims or specification.   The Court agrees that "transmittable mappable hypertext items" provides antecedent basis for "said items" and "said mappable hypertext items" appearing in the body of the claim.   However, the Court concludes that a construction is not necessary and that the disputed term will be given its plain meaning to one of ordinary skill in the art.

### i.   The Claim Language

The term "transmittable" appears only in the preamble of claim 11.   Specifically, the preamble of claim 11 recites "one or more *transmittable* mappable hypertext items representing people, organisms, and objects, including buildings, roads, vehicles, and signs."   Having reviewed the claims, the Court concludes that one of ordinary skill in the art would understand that "one or more transmittable mappable hypertext items" provides antecedent basis for "said items" and "said mappable hypertext items" appearing in the body of the claim.   The Court, however, finds that the term "transmittable" does not add anything to "said items" or "said mappable hypertext items" that is not already recited in the body of the claim.   For example, the claim recites that "said mappable hypertext items are quickly received, mapped, and optionally executably selected by said user."   Before an item can be received, it must be transmitted. Moreover, the Court finds that the term does not appear in any of the other claims and does not appear anywhere in the specification.

The Court also notes the parties have agreed that "mappable hypertext items" means "text or one or more symbols, displayable on a map, that can be selected to access additional information."[8]   Thus, the parties agree that "said mappable hypertext items" have been received by the computer and displayed to the user.   This agreed construction does not require that the

---

[8]  This is the same construction that the parties agreed to in *Aaron Bros. See Aaron Bros.*, Dkt. No. 195 at 14.

"mappable hypertext items" are "communicated between computers over a network," as proposed by Plaintiff.  Accordingly, the Court concludes that Plaintiff's construction rewrites the claim language to include words that are unnecessary.  Specifically, the words "network" and "computer over a network" fail to appear in claim 11.  This is in contrast to claim 5, which recites "whereby said mobile *computers* can communicate with other systems including antennas, peripheral devices, and *networks* by means of wired connections."  Thus, the plain language of the claim does not support construing "transmittable" as "communicated between computers over a network."  The Court will now turn to the other intrinsic evidence.

### ii.    The Intrinsic Evidence

In addition to the claims, the specification supports the Court's conclusion that a construction is not required.  Plaintiff contends that the patent teaches that the situation information system "generally transmit and receive information." '956 Patent at 11:47-48. Plaintiff points to Figures 1, 5, 13, and 14, and the respective descriptions, as examples of where the service provider's computer as well as the user's computer transmit and receive information. (Dkt. No. 383 at 18-19.)  The Court agrees that the specification provides a number of examples where data is transmitted and received by a user's computer.  But here, as it relates to "said computer," claim 11 is drafted from the perspective of a single computer.  In other words it recites that a single computer performs the "searching …", "converting …", and "displaying …" steps.  Thus, the scope of claim 11 captures one aspect of the embodiments disclosed in the specification. *Kara Tech. Inc. v. Stamps.com, Inc.*, 582 F.3d 1341, 1347-48 (Fed. Cir. 2009) ("It is the claims that define the metes and bounds of the patentee's invention" and "[t]he claims, not specification embodiments, define the scope of patent protection.") (citation omitted).

Additionally, claim 11 does not discuss a network and there is no reason to redraft the

claim to include "communicated between computers over a network" because of a single word in the preamble.  This is not to suggest that a system or a computer that communicates via a network falls outside the scope of the claim, it only means that at least one computer must meet each element of claim 11 as it relates to "said computer."  Indeed, the specification states that "the preferred embodiment … consists of *at least one mobile computer* with multiple transmitters and receivers." '956 Patent at 5:12-14 (emphasis added).

### iii.   Court's Construction

In light of the intrinsic evidence, the Court concludes that "transmittable" is unambiguous, is easily understandable by a jury, and requires no construction. Therefore, the term **"transmittable"** will be given its **plain meaning** to one of ordinary skill in the art.

### f.   *"converting said coordinates to an appropriately proportionate representation"*

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "converting said coordinates to an appropriately proportionate representation" | No construction is necessary.<br><br>Alternatively, "converting the coordinates into an appropriately proportionate representation of the coordinates." | "converting an item's coordinates to an appropriately scaled representation of the item" |

The parties dispute whether the claimed coordinates are converted "into an appropriately proportionate representation of the coordinates," or whether the claimed coordinates are converted into "an appropriately scaled representation of the item."  Plaintiff contends that the disputed phrase does not require construction, or alternatively the phrase should be construed to mean "converting the coordinates into an appropriately proportionate representation of the coordinates." Plaintiff argues that a person of ordinary skill in the art would understand that the

claimed coordinates refer to a point on a map.  Thus, Plaintiff contends that the claim requires converting the geographic coordinates to an appropriately proportionate representation of the geographic coordinates, by displaying a mappable hypertext item at the point associated with the geographic coordinates.

Defendants respond that "converting" does not mean "displaying," and Plaintiff's construction reads the "converting …" step out of the claim because the "displaying …" step already requires displaying the mappable hypertext item on a map.  Defendants also argue that Plaintiff's interpretation of its proposed construction completely disregards the "appropriately proportionate" language in the claim.  Plaintiff argues that Defendants' construction improperly and unnecessarily replaces the well-understood claim term "proportionate" with the word "scaled," which does nothing to further the purpose of claim construction and deviates from the express language of the claim.

The Court finds that both proposed constructions fail to properly define the scope of the claim and neither construction would provide meaningful guidance to a jury.  On its face, Plaintiff's alternative construction is ambiguous because it is not clear what it means to convert coordinates into a representation of the coordinates.  Similarly, Defendants' construction does not provide any guidance on what it means to convert coordinates into a representation of an item.  It is clear from the intrinsic evidence that the coordinates are not the item, but instead are associated with an item to provide the geographical location of the item.  Accordingly, the Court provides a construction that is consistent with the intrinsic evidence.

### i.    The Claim Language

The phrase "converting said coordinates to an appropriately proportionate representation" appears in Element "b" of claim 11.  The Court concludes that the term "said coordinates" finds

its antecedent basis in the first step of the claim: "searching each of one or more unique mappable information code sequences … for a field containing geographic coordinate, said each of said code sequences includes … a location field including said geographical coordinates." Thus, as the parties agree, a person of ordinary skill in the art would understand that "said coordinates" refers to the geographical coordinates contained in the location field of a mappable information code sequence. Further, the "searching …" step states that each code sequence serves "to uniquely represent one of [the mappable hypertext] items." Thus, the plain language of the claim requires that the geographical coordinates are associated with a particular mappable hypertext item.

Element "b" of claim 11 also recites that the coordinates are converted to an "appropriately proportionate representation." Defendants contend that the term "proportionate" means "having the correct relationship in size, quantity, or degree to something else." Dkt. No. 387-16 at 6; *see also* Dkt. No. 387-17 at 5 (defining "proportionate" as "proportional" and thus "corresponding in size, degree, or intensity"). The Court finds that these definitions are consistent with the intrinsic evidence. Thus, in the context of the '956 Patent, the term "proportionate" indicates that the claimed representation should have a size, quantity, or degree that is scaled (*i.e.*, "appropriate") in relation to something else.

Finally, the third step in Claim 11 is consistent with the Court's construction. *See Phillips*, 415 F.3d at 1314 ("[C]laims themselves provide substantial guidance as to the meaning of particular claim terms"). The third step in Claim 11 requires "displaying selectably scalably said items …." The parties agree that "selectably scalably" means "capable of being chosen for adjustment in size or detail." The third step also recites that the information is "mapped in the context of spatial information, including appropriate to a geographical or other area." Thus, the

third step uses the geographical coordinates associated with the item to generate a representation of the item that is capable of being mapped and appropriately scaled in size or detail (*i.e.*, "appropriately proportionate").    Accordingly, Defendants' concern with reading out the "displaying …" step of claim 11 is not an issue under the Court's construction because the coordinates must first be provided so that the method can determine an appropriately scaled representation of the item before it is actually displayed.  The Court will now turn to the other intrinsic evidence.

### ii.    The Intrinsic Evidence

The other intrinsic evidence indicates that the disputed "converting …" step is referring to providing the geographical coordinates associated with an item so that an appropriately scaled representation of the item is capable of being shown on a display.  As discussed above, claim 11 recites the embodiment disclosed in the specification related to mappable hypertext code 29.  Regarding this code, the specification states:

> A computer memory organized to include mappable hypertext code sequence 29 in FIG. 12 provides for rapid display of mappable information items, including map features, information sources, names, menus, and lists, certain of which may be executably selected by a user in order to display additional information related to any of such items, called a hypertext element, by receiving new information transmitted from the service provider. Additionally, code 29 *provides for graphically displaying on the user's display symbols and text appropriately relating to the items* and *in a manner which shows each item in a measurably appropriate relation to other such items of geographical features shown on the display* in an information sequence of data elements.
>
> …
>
> Element location 29c *provides the item's geographical location, in longitude and latitude or in reference to a given feature which the element location provides*.

'956 Patent at 21:55-22:15 (emphasis added).  Thus, the Court disagrees with Defendants that

the claimed "coordinates" are "converted to an appropriately scaled representation of the item." Instead, the Court finds that the coordinates are associated with an item and are used to generate an appropriately scaled representation of the item, which is then capable of being shown on a display.  Indeed, the specification teaches that the mappable hypertext items are displayed to scale on the map:

> All the aforementioned *items are displayed* according to their geographic locations *in the scale of the area to be viewed on the display, which area to be viewed is selectable and may be zoomed in or out*, for example, along with the user's location symbol.

'956 Patent at 22:51-55.  One of ordinary skill in the art would understand that the "unique mappable information code sequences," which includes the "geographic coordinates" associated with an item, enable the code to determine "a measurably appropriate relation to other such items of geographical features shown on the display." '956 Patent at 21:65-67.  In other words, the "coordinates" are neither converted "into an appropriately proportionate representation of the coordinates" as Plaintiff contends, nor converted into "an appropriately scaled representation of the item" as Defendants contend.  Instead, the coordinates are associated with an item and used to generate an appropriately scaled representation of the item, which is capable of being displayed.

### iii.    Court's Construction

In light of the intrinsic evidence, the Court construes **"converting said coordinates to an appropriately proportionate representation"** to mean **"using the geographical coordinates associated with the item to generate an appropriately scaled representation of the item, which is capable of being displayed."**

### g.   *"displaying"*

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "displaying" | "causing to appear" | No need to construe; plain and ordinary meaning. |

The parties dispute whether the term "displaying" should be construed by the Court. Plaintiff contends that Judge Folsom construed the term "displaying" in the third step of Claim 11 as "causing to appear." *See Aaron Bros.*, Dkt. No. 195 at 21.   Defendants respond that Judge Folsom did not construe the term "displaying" as "causing to appear," but instead construed "displaying" as "*said computer* causing to appear." *Id.* (emphasis added).   Defendants further argue that Judge Folsom included the "said computer" language to resolve the "apparent dispute about who or what 'do[es] the displaying.'" *Id.*   The Court agrees with Defendants on this point. Notwithstanding, Defendants contend that the term "displaying" need not be construed in this case because any dispute as to which computer performs the displaying step will be resolved more directly by the Court's construction of "said computer."   Defendants also contend that the term "displaying" would be readily understood by the jury without construction.   As in *Aaron Bros.*, the Court finds that the parties have a dispute over the proper scope of the claim language that must be resolved by the Court. *O2 Micro*, 521 F.3d at 1362-63.

### i.   The Claim Language

The term "displaying" appears in Element "c" of claim 11 in the phrase "displaying selectably scalably said items on said computer."   Element "c" also recites "whereby said user may quickly receive and *display* timely situation information."   It is clear from the claim language that the items and information are displayed to a user on the computer.   The Court will now turn to the other intrinsic evidence.

### ii.     The Intrinsic Evidence

In addition to the claims, the specification supports the Court's construction that "displaying" means "said computer causing to appear."  For example, the specification discloses "*graphically* displaying on the user's display symbols and text appropriately relating to the [mappable hypertext] items." '956 Patent at 21:63-64 (emphasis added).  Further, the Summary of the Invention discloses that "it is desirable that the form factor of the situation information device provide a usefully large display or graphical display unit (GDU)." '956 Patent at 5:48-50.  Similarly, in one embodiment "a menu of available lists are *caused to appear* on [a] device display…" '956 Patent at 25:18-21 (emphasis added).  In another embodiment, when "the user's location … approaches within a selectable distance … proximate station banner … *appears on display* 4a …" shown in Figure 2. '956 Patent at 13:30-33.  The inventor uses similar descriptions to teach other embodiments. *See, e.g.*, '956 Patent at 16:30, 19:28-30, 22:18-22.  Accordingly, the Court's construction is consistent with the embodiments disclosed in the specification.

### iii.     Court's Construction

In light of the intrinsic evidence, the Court construes **"displaying"** to mean **"said computer causing to appear."**

### h.  "displaying …" step (Element "c" in claim 11)

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, in which said mappable hypertext items are quickly received, mapped, and optionally executably selected by said user to provide additional of said situation information or received, stored, and transmitted by a provider of said situation information" | "Displaying selectably scalably said items on said computer, whereby said user may, quickly, receive and display timely situation information mapped in the context of spatial information, including spatial information appropriate to a geographical or other area, and whereby said mappable hypertext items are, quickly, either: (1) received, mapped, and optionally executably selected by said user to provide additional of said situation information; or (2) received by a provider of said situation information, stored by a provider of said situation information, and transmitted by a provider of said situation information. | No need to construe entire step. See proposed constructions for "timely situation information" and "whereby said user may quickly receive and display timely situation information." |

The parties' dispute whether the entire "displaying …" step (Element "c" in claim 11) should be construed.  Defendants contend that construing the entire "displaying …" step is unnecessary given that the disputed aspects of the construction will be resolved through construction of the constituent terms.  Specifically, Defendants note that the "displaying …" step includes the disputed terms "displaying," "timely situation information," and "whereby said user may quickly receive and display timely situation information," as well as "selectably scalably," a phrase that the parties have an agreed upon construction.

Plaintiff contends that in the *Aaron Bros.* case, Judge Folsom addressed several claim

construction and indefiniteness arguments made by the defendants relating to the "displaying …" step. *See Aaron Bros.*, Dkt. No. 195 at 24-34.  Plaintiff argues that the Court should adopt Judge Folsom's comprehensive construction to avoid leaving the jury with a fragmented construction of various terms of this step.  Plaintiff further argues that Defendants do not provide any reasoned basis for refusing to provide the jury with Judge Folsom's helpful and comprehensive construction of this entire step.  The Court agrees with Plaintiff and finds that Judge Folsom's thorough analysis of the "displaying …" step would be helpful to a jury and is not diminished just because it includes term that are otherwise disputed by the parties.  The Court further clarifies Judge Folsom's construction by numbering the individual steps.  Accordingly, for the reasons stated in the *Aaron Bros.*, the Court construes **Element "c"** of claim 11 as follows:

> **(1)  displaying selectably scalably said items on said computer,**
>
> **(2)  whereby said user may, quickly, receive and display timely situation information mapped in the context of spatial information, including spatial information appropriate to a geographical or other area,**
>
> **and**
>
> **(3)  whereby said mappable hypertext items are, quickly, either:**
>
> > **(a)  received, mapped, and optionally executably selected by said user to provide additional of said situation information; or**
> >
> > **(b)  received by a provider of said situation information, stored by a provider of said situation information, and transmitted by a provider of said situation information."**

i.   *"whereby said user may quickly receive and display timely situation information"*

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "whereby said user may quickly receive and display timely situation information" | This term does not need construction beyond construction of the phrase "displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely situation information mapped in the context of spatial information…" previously construed by the Court | "whereby the user receives and displays timely situation information quickly enough to be able to take advantage of the information, such as while the user is still proximate to a relevant location or has not yet reached the location," otherwise indefinite. |

The parties' dispute whether the Court should construe the phrase "whereby said user may quickly receive and display timely situation information" in light of the Court's construction for "timely situation information" and the "displaying …" step.  Plaintiff contends that there is no need to construe this language separately from the construction of the "displaying …" step and the construction of "timely situation information."  Plaintiff also argues that Defendants' construction reads a limitation into the claim language that is not supported in the intrinsic evidence.

Defendants respond that their construction is based on Judge Folsom's explanation of the claim language, and that the construction would be helpful to the jury in determining if an accused product enables a user to receive and display timely situation information quickly enough to fall within the scope of the claims.  In the alternative, Defendants contend that the disputed phrase is indefinite.  The Court agrees with Plaintiff.  Judge Folsom found that "the constituent term 'timely situation information' [as well as the Court's construction for the

"displaying ..." step] enables a finder of fact to objectively evaluate the constituent term
'quickly.'" *See Aaron Bros.*, Dkt. No. 195 at 29.  Accordingly, the Court concludes that no
construction is necessary and that the phrase is not indefinite.

### i.    The Claim Language

The term "whereby said user may quickly receive and display timely situation
information" appears in Element "c" of claim 11.  As discussed above, the Court has construed
the entire Element "c."  Moreover, the Court has construed "displaying," "said computer," and
"timely situation information."[9]  Likewise, the parties have agreed to constructions for
"selectably scalably," "mappable hypertext items," and "optionally executably selected by said
user to provide additional of said situation information," which all appear in Element "c."  When
Element "c" and the disputed phrase is read in light of the Court's constructions and the parties'
agreed upon constructions, the Court concludes that a finder of fact will be able to objectively
evaluate the constituent term "quickly."  Thus, further construction of the disputed phrase is not
required.

The Court also finds that Defendants have failed to provide justifications for adding
further limitations to the claim language.  Although Defendants proposed construction is based
on Judge Folsom's explanation of the claim language, Defendants fail to recognize that Judge
Folsom did not find that his explanation was required for the construction of Element "c."
Instead, Judge Folsom concluded that "the constituent term 'timely situation information'
enables a finder of fact to objectively evaluate the constituent term 'quickly.'" *See Aaron Bros.*,
Dkt. No. 195 at 29.  The Court agrees with Judge Folsom's analysis and concludes that the
disputed phrase does not need construction in light of the other disputed terms/phrases construed

---

[9]  "[T]imely situation information" is the last phrase appearing in the disputed phrase at issue.

by the Court, as well as the terms/phrases agreed upon by the parties that are nested within Element "c."

Finally, the Court finds that Defendants' proposed construction is circular because it includes "quickly," the very term that Defendants contend renders the disputed phrase indefinite. It is disingenuous to argue that a phrase is indefinite because it includes "quickly," while at the same time including the alleged indefinite term in the proposed construction. Accordingly, Defendants have failed to justify adding further limitations to the claim language.

### ii.    Court's Construction

In light of the constructions for the other disputed and agreed upon terms/phrases, the Court finds that the phrase **"whereby said user may quickly receive and display timely situation information"** requires no additional construction. Additionally, for the reasons stated in the *Aaron Bros.*, the Court finds that the phrase is not indefinite. *See Aaron Bros.*, Dkt. No. 195 at 24-34.

### V.    CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit. The parties are **ORDERED** that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are **ORDERED** to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby **ORDERED**, in good faith, to mediate this case with the mediator agreed upon by the parties. As a part of such mediation, each party shall appear by counsel and by at least

one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation.  Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So ORDERED and SIGNED this 19th day of June, 2013.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE